1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES F. RIGBY, Chapter 7 Trustee
of Michael R. Mastro,

               Plaintiff,

      v.

MICHAEL J. CORLISS, et al.,

             Defendants.

Case No. C14-0340RSL

ORDER REGARDING MICHAEL
CORLISS' MOTIONS IN LIMINE

     This matter comes before the Court on the "Defendant's Motions in Limine." Dkt.

# 18. Plaintiff is the trustee in an involuntary bankruptcy proceeding involving Michael

R. Mastro. The trustee accuses defendant Michael J. Corliss of assisting Mastro in

secreting assets and leaving the district, causing the trustee to incur additional expenses to

locate both the debtor and the assets. This matter will be decided in a bench trial

ORDER REGARDING MICHAEL CORLISS'
MOTIONS IN LIMINE - 1

scheduled to begin on July 9, 2018. Corliss seeks to exclude from trial seven categories of evidence.

### 1. Mastros' Invocation of the Fifth Amendment

The Court takes this matter under advisement. The parties agree that the imputation of a non-party's invocation of the Fifth Amendment to a party requires an evaluation of the relationship between the two people (including its nature, the degree of control the party has over the non-party, the compatibility of their interests in the litigation, and the role the non-party played in the events giving rise to the litigation) in order to determine whether the Mastros acted out of loyalty to Corliss. The Court will be in a better position to judge whether the Mastros' invocation of the Fifth Amendment in response to the trustee's questions gives rise to an adverse inference against Corliss after the record is more fully developed at trial.

### 2. Gloria Plischke Letters to Mastro

Corliss seeks to exclude from evidence two handwritten letters written by Mastro to his sister, Gloria Plischke, regarding his wishes for disbursement of a portion of the inheritance Mastro received from another sister. The trustee argues that the letters are not being offered for the truth of the matters asserted therein, but rather to show the effect the letters had on Plischke, particularly why she sent two checks to a corporation owned by Corliss on April 11, 2011. The trustee also identifies three potentially applicable exceptions to the hearsay rule: the state of mind exception, the business records

exception, and the statement against interest exception. While the Court has doubts

regarding the applicability of the business records and statement against interest

exceptions, the letters appear to be admissible for non-hearsay purposes and/or as a

statement of Mastro's state of mind at the time the letters were written. When the letters

were written is a contested issue of fact, however. To the extent Mastro intended to make

an assertion of fact when he dated the letters and/or referenced the date of the first letter

in the second, those statements are hearsay, and the trustee has not identified an

applicable exception. Fed. R. Ev. 801(a). The Court will not, therefore, rely on those

"statements" for the truth of the date on which the letters were written.

### 3. Documents Filed in Bankruptcy Court

Corliss objects to the admission of certain documents filed in the bankruptcy

court, including United States Bankruptcy Judge Mark Barreca's orders, on hearsay

grounds. While the Court may take judicial notice that a document was filed and the

contents of that record, unless the doctrines of claim or issue preclusion applies, the

statements contained therein are not proof of the matters asserted. U.S. v. Stinson, 647

F3d 1196, 1210-11 (9th Cir. 2011). The trustee offers no theory under which Judge

Barreca's finding that certain gold bars, jewelry, and other property were assets of the

bankruptcy estate is legally operative in its own right. Rather, the trustee wants to use

Judge Barreca's statements as proof of ownership. The orders are not admissible for that

purpose.

ORDER REGARDING MICHAEL CORLISS'
MOTIONS IN LIMINE  - 3

### 4. Documents Disclosed After the Discovery Deadline

The trustee produced two documents that he intends to use as trial exhibits nine months after the discovery deadline set by the bankruptcy court. The trustee asserts that the documents were previously disclosed, but the evidence he cites has nothing to do with the two documents to which Corliss objects. The trustee also suggests, without actually stating, that the failure to disclose was substantially justified because there was a colorable claim of privilege and the documents were the subject of a then-pending motion to compel. If the Court understands the trustee's argument correctly, it is unpersuasive. The trustee produced the two documents before the Court ruled on the motion to compel. Any claim of privilege was seemingly too insubstantial to wait for the Court's decision, and the trustee has not otherwise shown that the failure to disclose was substantially justified. Unless the trustee can show, prior to offering these documents at trial, that the failure to disclose during discovery was substantially justified and/or harmless, the documents are inadmissible.

### 5. Witnesses Disclosed After the Discovery Deadline

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires litigants to disclose the name, address, and telephone number "of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." The fact that the trustee identified pages of names in response to a discovery request

seeking the identity of persons with knowledge of particular investigative activities did not alter the fact that Corliss had no idea whose testimony the trustee intended to rely upon at trial until long after discovery had closed. The trustee was required to identify each person he intended to use to support his claims at the beginning of the litigation and to supplement that list as discovery revealed additional witnesses he may call as witnesses. He did not, and has not shown that the failure was substantially justified or harmless. The trustee will not be permitted to call Kara King, David Gebben, or Eugene Becker as witnesses in his case in chief at trial.[1]

The trustee may call Michael and Lauri Corliss as witnesses. The harms at which Rule 26(a) is aimed, namely an inability to inquire as to a witnesses knowledge and test the veracity of their statements through discovery, do not apply when the undisclosed witness is the defendant and spouse with whom he shares a community of interests.

### 6. Expert Report and Testimony of Scott Solomon

In <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury. The gatekeeping function applies to all expert testimony, not just testimony based on the hard sciences. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999). To be admissible under <u>Daubert</u> and <u>Kumho</u>, expert testimony must

---

[1] As discussed at oral argument, Gloria Plischke will not be required to appear at trial and is therefore unavailable as a witness. The trustee may utilize her prior recorded testimony at trial.

ORDER REGARDING MICHAEL CORLISS'
MOTIONS IN LIMINE - 5

be both reliable and helpful. The reliability of expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. Daubert, 509 U.S. at 594-95. In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation. Daubert, 509 U.S. at 590. The testimony must also be "helpful" in that it must go "beyond the common knowledge of the average layperson" (U.S. v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002)) and it must have a valid connection between the opinion offered and the issues of the case (Daubert, 509 U.S. at 591-92). The trustee, as the party offering Scott Solomon as an expert, has the burden of proving both the reliability and helpfulness of his testimony. Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007).

Based on the existing record, the Court has concerns regarding the reliability of Solomon's methodology to the extent that the universe of bank and credit card records he reviewed is incomplete. The Court also has concerns regarding the relevance of his analysis to the extent the Court determines that the loss of estate assets is not the appropriate measure of damages in this case. Because "the Daubert gatekeeping obligation is less pressing in connection with a bench trial," the Court takes Corliss' challenge to Solomon's testimony and report under advisement. AngioScore, Inc. v. TriReme Med., Inc., 87 F. Supp3d 986, 1016 (N.D. Cal. 2015) (citations omitted).

Solomon will be permitted to testify, but the testimony may be stricken if the evidence is found to be unreliable and/or irrelevant.

### 7. Invoices from Law Firms

The trustee has identified as trial exhibits invoices for services provided by various law firms, including Barrow & Williams, Baker & McKenzie, Miller Thompson, and M&P Legal. Corliss argues that these invoices are inadmissible for two reasons: (a) the bankruptcy court has already determined that "[a]ttorneys fees, incurred for purposes of recovery or otherwise, are not collectible as conversion damages in Washington" (Dkt. #18 at 256); and (b) they were not disclosed or included in a computation of damages at any point prior to the January 30, 2017, general discovery deadline (Fed. R. Civ. P. 26(a)(1)(A)(iii)). The latter argument is dispositive. Although the trustee asserts that "the invoices that Corliss complains about were all produced prior to the discovery cutoff date," he then states that invoices from three of the four law firms were disclosed on March 21, 2017, and offers no evidence of a prior disclosure date – or of any disclosure of the Barrow & Williams invoices until they were identified as trial exhibits. Dkt. #21 at 15.

Pursuant to Rule 26(a)(1)(A)(iii), the trustee was required to provide "a computation of each category of damages claimed" and to make available "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based . . . ." In his initial disclosures, the trustee stated that

he had incurred "[i]nvestigative costs related to locating the Mastros and estate assets" in the amount of $2,877,607. Dkt. #18 at 183. Assuming some portion of that amount may reflect time billed by attorneys, no specifics are provided regarding either the billing entities or the amounts charged. In his amended disclosures, the trustee acknowledges an obligation to supplement his answer regarding investigative costs after the bankruptcy court determined whether attorney's fees were recoverable. Dkt. #18 at 191. He did not do so.

The object of the rule requiring initial disclosures is "to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information . . . ." Rule 26(a) advisory committee's note to 1993 amendment. The trustee did no more than identify various categories of damage: no calculations or documents were provided. This response was plainly insufficient and was not remedied until after discovery had closed. Even then, the trustee did not disclose one of the billing entities or what portion of the attorney's time it considered recoverable, leaving Corliss to guess as to the computation of damages claimed. The trustee may not use the invoices to support his claim for damages.

//

//

For all of the foregoing reasons, Corliss' motions in limine are GRANTED in part and otherwise taken under advisement as set forth in this order.

Dated this 27th day of June, 2018.

Robert S. Lasnik
United States District Judge